Rettig v Holler (2003 NY Slip Op 51501(U))

[*1]

Rettig v Holler

2003 NY Slip Op 51501(U)

Decided on September 16, 2003

Supreme Court, New York County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 16, 2003

Supreme Court, New York County,
 JOSHUA RETTIG and LINDA RETTIG, Plaintiffs,
against
ANN LESLIE HOLLER and 161 WEST END AVENUE OWNERS CORP., Defendants.
Index No. 126865/02

HAROLD B. BEELER, J.
Defendant Ann Leslie Holler ("Holler"), daughter of plaintiffs' Joshua Rettig ("J. Rettig") and Linda Rettig ("L. Rettig") (collectively "plaintiffs" or "The Rettigs"), moves for partial summary judgment on her first counterclaim dismissing the underlying complaint and for an interlocutory judgment pursuant to Section 915 of the RPAPL determining the right, share and interest of each party in the premises and directing that the premises be sold at a public auction. Plaintiffs oppose.This is an action for constructive trust with regard to certain shares of a cooperative corporation and proprietary lease. Plaintiffs allege they agreed to put their daughter, Holler, on the lease and stock certificate of the cooperative apartment they purchased at 165 West End Ave., apt. 4M in New York County ("co-op apartment" or "premises") not because they were gifting a portion of their co-op apartment to her, but because such act was required by the Board in order for them to allow Holler and her family to live there, even if only temporarily. On the contrary, Holler contends that a portion of the co-op was gifted to her from her parents for her and her family to live in for as long as they wanted.
In or about November 2001, Holler, who was then living rent free with her husband at 263 West End Ave in New York County, an apartment owned by her parents, informed her parents she was pregnant. Holler alleges that, in response, her father announced his intention to purchase for her an apartment as a gift for her "growing family". The Rettigs allege the plan was for them to purchase for themselves an apartment in Manhattan, larger than the one in which Holler and her husband were then living, and to allow Holler and her family to reside there until such time as J. Rettig retired approximately two years when plaintiffs would commence their own "retirement" residence in the co-op apartment.
A suitable co-op was found and on May 6, 2002, Holler and her husband were interviewed by the Board in connection with their anticipated tenancy. Holler submitted to the Board character references and signed certain documents the Board requires tenants to sign such as "Notice to Tenant as to Window Guards", "Applicant's Release" and "Acknowledgment of Receipt of House Rules". Plaintiffs, who were paying for the co-op entirely by themselves [FN1], allege they were advised by their real estate broker, Bessy Sylvia Zeevi ("Zeevi") that the co-op would not allow Holler and her husband to reside in the co-op, even temporarily, (since they did not financially qualify for it) unless plaintiffs placed Holler on the lease and stock certificate. The closing occurred on May 30, 2002 at which time the Board issued 458 shares contained in the stock certificate to both plaintiffs and Holler and defendant 161 WEST END AVENUE OWNERS CORP. ("161 West End"), as lessor, and plaintiffs and Holler, as lessees, entered into a proprietary lease for the term May 30, 2002 to April 30, 2062.
Holler alleges that, thereafter, at her parents' urging, she quit her job to join her mother [*2]and brother, non-party Benjamin Rettig ("B. Rettig"), in rehabilitating the premises, (painting, spackling, sanding door frames, removing and replacing tiles, purchasing supplies and upgrading the kitchen and bathroom) and worked 6 days a week from 9 am to 7 pm. This is disputed by both plaintiffs and B. Rettig who attribute her job loss solely to her personal choice not to be in the workforce while pregnant and further contend that she had very little to do with the renovations and actually did more harm than good when present because of her alleged abusive manner. Plaintiffs themselves paid for the cost of all renovations [FN2].
The renovations were completed in or about the time Holler's baby was born, on July 11, 2002, at which time J. Rettig refused to permit Holler and her family to move into the premises and instead, moved into the co-op apartment himself. Holler alleges her parents have refused to see their grandchild since she was born while plaintiffs complain that Holler refuses to allow them access to her. "Having lost her prospective home", Holler and her family moved out of their "free" apartment at 263 West End Ave in October 2002 and moved into a rental apartment in the Bronx. J. Rettig requested Holler execute the necessary documents to remove her name from the stock certificate and lease but Holler refused and so, in December 2002, plaintiffs commenced this action for a constructive trust in its favor against the interest of Holler in the shares of the cooperative corporation and proprietary lease.
Plaintiffs argue that "gift law" rather than the Real Property Law applies with regard to the issue of Holler's alleged ownership interest in the co-op apartment. In reliance thereon, plaintiff's further argue that the issue of their donative intent is one which needs to be explored in discovery to determine whether the gift was completed. Thus, plaintiffs argue that summary judgment must be denied because of the existence of triable issues of fact.
The court notes that, in order to establish a constructive trust there must be (I) a confidential or fiduciary relation; (ii) a promise, express or implied; (iii) a transfer made in reliance on that promise; and (iv) unjust enrichment. Bankers Sec. Life Ins. Society v Shakeridge, 49 NY2d 939 (1980). A constructive trust may be imposed when property has been acquired in such circumstances that the holder of the legal title may not, in good conscience, retain the beneficial interest. Sharp v Kosmalski, 40 NY2d 119 (1976). A person may be deemed to be unjustly enriched if he has received a benefit, the retention of which would be unjust. A conclusion that one has been unjustly enriched is essentially a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties. It is a conclusion reached through the application of principles of equity. Id. Equity should intervene to scrutinize a transaction pregnant with opportunity for abuse and unfairness. Id.
The court further notes that the requisites for a valid gift inter vivos are (I) intent on the part of the donor to give; (ii) delivery of the property given, pursuant to such intent; and (iii) acceptance on the part of the donee. In Re Estate of Szabo, 10 NY2d 94 (1961). One asserting a gift has the burden of proving it by clear and convincing evidence. In Re Carroll, 100 AD2d 337 (1984).
While acknowledging that shares to a cooperative apartment may indeed be subject to judicial partition (Chian v Chang, 137 AD2d 371 (1st Dep't 1988), the court agrees with plaintiffs that triable issues of fact exist precluding summary judgment. Discovery, which has not yet commenced in this action, is clearly needed, at the very least to determine whether or not the Board did require that plaintiffs place Holler on the stock certificate and proprietary lease before allowing Holler and her family to live there, even if only temporarily, as well as all the circumstances surrounding the intent of the parties to the transaction.
WHEREFORE, it is
ORDERED that defendant Holler's motion is denied, and it is further
[*3]
ORDERED that a preliminary conference is scheduled for Tuesday, October 28, 2003 at 3:00 pm at Part 9, 71 Thomas Street, Room 304.
This constitutes the decision and order of the court.
Dated:September 16, 2003
E N T E R:
_____________________________
HAROLD B. BEELER, J.S.C.

Decision Date: September 16, 2003
Footnotes

Footnote 1:Plaintiffs paid the $60,000 deposit as well as the balance of $540,000 in an all cash closing.

Footnote 2:The renovations cost $87,400.